# REAL ESTATE PURCHASE AGREEMENT

7101 East Lincoln Dr., Paradise Valley, AZ 85253

**THIS REAL ESTATE PURCHASE AGREEMENT** (this "**Agreement**") is made and entered into as of the "**Effective Date**" (defined below) by and between **GENTREE, LLC**, an Arizona limited liability company ("**Seller**"), and **WALTON GLOBAL HOLDINGS, LLC**, a Delaware limited liability company, or its assignee ("**Purchaser**").

W I T N E S S E T H

WHEREAS, Seller is a debtor-in-possession under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Arizona (the "**Bankruptcy Court**"), Case Number 2:21-bk-05347-BKM (the "**Bankruptcy Case**");

WHEREAS, Seller and Purchaser have entered into that certain Option Agreement for the Purchase of Real Property dated January 31, 2022 pertaining to the Property (defined below) (the "**Option Agreement**"), which was approved by the Bankruptcy Court; and

WHEREAS, Purchaser has exercised its option to purchase the Property pursuant to the Option Agreement; and

WHEREAS, the transaction contemplated by this Agreement is subject to approval by the Bankruptcy Court (the approval or deemed approval by the Bankruptcy Court of the transaction described by this Agreement, the "**Bankruptcy Court Approval**").

In consideration of Ten Dollars ($10.00) in hand paid, of the mutual promises hereinafter set forth, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.     **Definitions.** The following terms as used herein shall have the following meanings:

"**Buildings**" means the buildings located on the Property.

"**Closing**" shall have the meaning set forth below in Section 10.1.

"**Closing Date**" shall be the date the Closing occurs.

"**Effective Date**" means the date that the Option is exercised.

"**Environmental Laws**" means any applicable Law, and any Governmental Order or binding guidance or agreement with any Governmental Authority: (a) relating to pollution (or the cleanup thereof) or the protection of natural resources, endangered or threatened species, human health or safety, or the environment (including ambient air, soil, surface water or groundwater, or subsurface strata); or (b) concerning the presence of, exposure to, or the management, manufacture, use, containment, storage, recycling, reclamation, reuse, treatment,

- 1 -

generation, discharge, transportation, processing, production, disposal or remediation of any Hazardous Materials. The term "**Environmental Law**" includes, without limitation, the following (including their implementing regulations and any state analogs): the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended 42 U.S.C. §§ 9601 et seq.; the Hazardous Materials Transportation Act, 49 U.S.C. §§ 1801, et seq.; the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. §§ 6901 et seq.; the Federal Water Pollution Control Act of 1972, as amended, 33 U.S.C. §§ 1251 et seq.; the Toxic Substances Control Act of 1976, as amended, 15 U.S.C. §§ 2601 et seq.; the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. §§ 11001 et seq.; and the Clean Air Act of 1966, as amended, 42 U.S.C. §§ 7401 et seq.; and the Occupational Safety and Health Act of 1970, as amended, 29 U.S.C. §§ 651 et seq.

"**Force Majeure**" means acts of God, war on U.S. soil, a terrorist act, including cyberterrorism, that causes either a loss of access to banking system which prevents the transfer of funds within the U.S. at the time a transfer of funds is required by this Agreement and/or prevents the title company from performing its tasks for a timely closing. For the avoidance of doubt, Force Majeure shall not include (a) financial distress nor the inability of either party to make a profit or avoid a financial loss, (b) changes in market prices or conditions, or (c) a party's financial inability to perform its obligations hereunder.

"**Governmental Authority**" means any federal, state, local or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-government regulatory authority (to the extent that the rules, regulations or orders of such organization or authority have the force of Law), or any arbitrator, court or tribunal of competent jurisdiction.

"**Governmental Order**" means any order, writ, judgment, injunction, decree, stipulation, determination or award entered by or with any Governmental Authority.

"**Hazardous Materials**" means: (a) any material, substance, chemical, waste, product, derivative, compound, mixture, solid, liquid, mineral or gas, in each case, whether naturally occurring or manmade, that is hazardous, acutely hazardous, toxic, or words of similar import or regulatory effect under Environmental Laws; and (b) any petroleum or petroleum-derived products, radon, radioactive materials or wastes, asbestos in any form, lead or lead-containing materials, urea formaldehyde foam insulation and polychlorinated biphenyls.

"**Land**" shall have the meaning set forth below in Section 2.

"**Law**" means any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree, other requirement or rule of law of any Governmental Authority.

"**Property**" shall have the meaning set forth below in Section 2.

010-9323-1930/7/AMERICAS

"**Service Contracts**" means (i) all maintenance agreements, (ii) all supply agreements, and (iii) all other agreements, commitments or arrangements relating to maintenance, servicing and/or operation of the Property, and all amendments thereto and modifications thereof, as more particularly described on **Schedule 6.1.3**.

"**Title Company**" shall mean Fidelity National Title Insurance Company.

2.      **Conveyance**. Subject to the terms and conditions of this Agreement, Seller agrees to convey and Purchaser agrees to purchase the Smoketree Resort located at 7101 East Lincoln Dr., Paradise Valley, Arizona 85258, consisting of approximately five (5) acres of land zoned SUP-R, which land is legally described on **Exhibit A** attached hereto (the "**Land**"), together with (a) all buildings, structures and other improvements, utilities and fixtures thereon, including the Buildings (the "**Improvements**"), and (b) all of Seller's right, title and interest, if any, in and to any air space, sub-terrain, roads, streets, alleys and ways, public and private, serving any of said Land or Improvements, all of Seller's right, title and interest, if any, in and to any land lying in the bed of any street, road, avenue or alley, open or closed, or proposed to be opened or closed, in front of or adjoining any of said Land, and all other appurtenances, water lines, uses, licenses, rights, easements, rights-of-way, tenements and hereditaments incident thereto, and all right, title and interest of Seller in and to all products, proceeds and awards resulting from the pending condemnation litigation with respect to a portion of the Land (collectively, the "**Appurtenant Rights**"); (c) all development rights and approvals, if any; and (d) all of Seller's right, title and interest in and to all fixtures and tangible personal property which are located on the Land as of the Closing Date (it being understood that Seller may remove some or all of the tangible personal property from the Land prior to Closing at Seller's discretion) (the "**Personal Property**" (the Land, Improvements, Appurtenant Rights, and Personal Property hereinafter individually and collectively referred to as the "**Property**").  Property does not include the liquor license owned by a subsidiary which, if purchased by Purchaser, shall be pursuant to a separate agreement or the furniture and equipment owned by the Debtor.

3.      **Purchase Price and Deposit.**

3.1      The total purchase price (the "**Purchase Price**") for the Property shall be Four Million and No/100 Dollars ($4,000,000.00) plus the amount necessary to pay in full the promissory note between Seller and Smoke Tree Resort, LLC (the "**Lender**") as of the Closing Date; provided, however, that the total Purchase Price shall be subject to a cap of $14,000,000.00. The Purchase Price, less the Option Earnest Money and the Deposit (both defined below) and subject to any adjustments described in this Agreement, shall be payable in full in immediately available funds at the Closing.

3.2      Pursuant to the terms of the Option Agreement prior to the Effective Date Purchaser has deposited Earnest Money (as such term is defined in the Option Agreement) in the aggregate amount of _____ and No/100 Dollars ($_____) (the "**Option Earnest Money**") with the Title Company.

3.3      Within three (3) business days after the Effective Date, Purchaser shall deliver to the Title Company a deposit in the amount of Seven Hundred Thousand and No/100 Dollars ($700,000.00) (the "**Deposit**") in immediately available funds. The Deposit and Option Earnest

Money shall be applied toward the Purchase Price at Closing.  Notwithstanding anything to the contrary herein, a portion in the amount of One Hundred Dollars and No/100 ($100.00) of both the Deposit and the Option Earnest Money are non-refundable to Purchaser (and deemed immediately earned by Seller), which the parties acknowledge is good and sufficient consideration for this Agreement (the "**Independent Consideration**").

3.3     The parties acknowledge that the Title Company is executing this Agreement solely to acknowledge its agreement to hold (as Purchaser deposits the same) and disburse the Option Earnest Money and the Deposit, as the escrow agent in accordance with the terms and provisions of this Agreement. In performing its duties as escrow agent holding the Option Earnest Money and the Deposit as provided in this Agreement, the Title Company shall not incur any liability to anyone for any damages, losses or expenses, except for its gross negligence, willful default, or breach of trust, and it shall accordingly not incur any such liability with respect to (a) any action taken or omitted in good faith upon advice of its counsel, or (b) any action taken or omitted in reliance upon any instrument, including written notice or instruction provided for in this Agreement, not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and accuracy of any information contained therein, which Title Company shall in good faith believe to be genuine, to have been signed or presented by a proper person or persons, and to conform with the provisions of this Agreement. If a dispute arises with respect to the distribution of any part of the Option Earnest Money and the Deposit held by the Title Company, the Title Company may apply to the Bankruptcy Court for an order determining the party or parties to whom such portion of the Option Earnest Money and the Deposit shall be paid, and thereupon be discharged from all further duties and liabilities under this Agreement. All costs of such proceedings together with all reasonable attorneys' fees and costs incurred by the Title Company and the successful party or parties in connection therewith shall be paid by the unsuccessful party or parties to such proceeding.

**4.      Title**.

4.1     The following conditions concerning title to the Property shall exist at the time of Closing hereunder, and the obligation of Purchaser to close hereunder shall be expressly conditioned upon and subject to the satisfaction (or written waiver by Purchaser) of each such condition:

4.1.1 Title to the entire Property shall be (and is required to be) good and marketable, and free and clear of all liens and monetary encumbrances as defined in section 4.1.3, except for (i) rights of way and/or easements to public authorities and/or publicly-regulated utility companies for public street purposes or fire lanes or for utilities or utilities installations which are recorded in the public records; (ii) then-current real estate taxes and assessments and sewer and water charges not yet due and payable; (iii) zoning, building codes and other land use Laws (iv) matters that  should reasonably have been revealed during Purchaser's physical inspection of the Property; (v) those matters reflected on the Title Commitment and/or the Survey (as those terms are defined below in Section 4.2) (collectively, the **"Permitted Exceptions"**).

4.1.2 Title to the entire Property shall be insurable, in an amount not less than the Purchase Price of the Property, by the Title Company under the ALTA standard full coverage, subject only to the Permitted Exceptions.

- 4 -

4.1.3 The Property shall be conveyed to Purchaser at Closing free and clear of all mortgages, deeds of trust, mechanics liens, judgment liens, security interests, and other liens on the Property voluntarily or otherwise created by Seller, which can be satisfied by payment of money (collectively, "**Seller Liens**"). Seller Liens shall not be deemed to be Permitted Exceptions. The Bankruptcy Court Approval shall be reflected in an order approving this Agreement (the "**Sale Order**"), and shall include the Bankruptcy Court's finding that the Purchaser is entitled to the protections of § 363(m) of the Bankruptcy Code and that the sale to Purchaser is free and clear of all liens, claims, interests, and encumbrances in accordance with § 363 of the Bankruptcy Code.

4.2 Purchaser may, at its own expense and in its sole discretion, order (a) a commitment for owner's title insurance for the Property (the "**Title Commitment**") from the Title Company and (b) a current survey of the Property (the "**Survey**"). Any matters reflected in the Title Commitment or the Survey shall be Permitted Exceptions.[1]

4.3 If title to the entire Property at Closing is not as required pursuant to the terms and provisions of Section 4.1 above, which title issues cannot be resolved by the Sale Order approving the sale referred to in 4.1.3 above or cured by the Seller within a reasonable time, then Purchaser shall have the option, in its sole discretion, exercised by written notice to the Seller, either (i) to waive such defects and proceed to Closing in accordance with the terms of this Agreement with such adjustments to the Purchase Price as may be negotiated and mutually agreed with Seller and approved by the Bankruptcy Court (if required), or (ii) to terminate this Agreement, in which event the Deposit and Option Earnest Money shall be immediately returned to by Seller to Purchaser and the parties shall be relieved from all further liability or obligation under this Agreement, except for those obligations which expressly survive a termination of this Agreement. Purchaser's election under this Section 4.3 shall be Purchaser's sole right if title to the Property is not as required pursuant to Section 4.1 above unless the failure of title to be in conformity with Section 4.1 shall have been caused by a breach of this Agreement by Seller (including, without limitation, Seller's failure to comply with the terms of Section 4.1.3), in which event the provisions of Section 12.1 of this Agreement shall also apply.

5.      **[Reserved.]**

6.      **Representations and Warranties**.

6.1      **Representations and Warranties of Seller**. To induce Purchaser to execute this Agreement and perform its obligations hereunder, the following representations and warranties of Seller set forth in this Section 6.1 shall be true as of the Effective Date and the Closing Date and shall not survive Closing. If Seller acquires knowledge of any facts rendering any of the foregoing representations and warranties false at any time prior to Closing, Seller shall immediately notify Purchaser in writing of such facts (provided, that a failure to give notice in accordance with this sentence shall not constitute a breach of this Agreement for purposes of Section 14.1.1). Seller hereby represents and warrants to Purchaser as of the Effective Date, except as set forth in the disclosure schedule attached hereto as **Schedule 6.1** and incorporated

---

[1] In the event Purchaser's title and survey review uncover matters which Seller agrees to take action to cure or otherwise address (i.e., curative affidavit), then such matters shall be added to this Agreement as a closing deliverable or otherwise prior to finalizing and signing.

010-9323-1930/7/AMERICAS

herein by this reference (the "**Real Estate Disclosure Schedule**"), as set forth below. All Representations and Warranties of Seller are made to the best of Seller's actual knowledge without any duty of investigation. For the avoidance of doubt, Seller and Purchaser acknowledges that this sale is "as is" and Purchaser has completed its due diligence as it determined was necessary in its judgment.

6.1.1 <u>Organization and Power.</u> Seller is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Arizona. Subject to the Bankruptcy Court Approval, Seller has full power and authority to execute, deliver and carry out the terms and provisions of this Agreement and all documents required on its part to be executed and has taken all necessary corporate action to authorize the execution, delivery and performance of this Agreement and all other agreements and instruments executed in connection herewith and the performance of those provisions of this Agreement required on its part to be carried out. Subject to the Bankruptcy Court Approval, the persons executing this Agreement (and all other agreements and instruments entered into by Seller in furtherance hereof), on behalf of Seller, have the authority to bind Seller to the terms and conditions of this Agreement (and all said agreements and instruments).

6.1.2 <u>No Conflict.</u> Seller's execution and delivery of, and performance of its obligations under, this Agreement will not conflict with Seller's bylaws or other corporate governing documents nor will they, subject to the Bankruptcy Court Approval, constitute a material default under any document, instrument or agreement to which Seller is a party, or violate any applicable law, regulation or court order.

6.1.3 <u>Taxes.</u> There are no taxes arising out of the conduct of Seller's businesses or operation and management of the Property which are or may become a lien against the Property other than any deferred or rollback taxes which, if applicable, Seller is required to pay at Closing (except ad valorem taxes for the current year).

6.1.4 <u>Litigation.</u> There are no agreements, consent orders, decrees, judgments, licenses, Permits, conditions or other directives, issued by a Governmental Authority or court which restrict the present use, or require any change in the present use, or operations of the Property. Except as set forth on the Real Estate Disclosure Schedule, there is no pending or threatened litigation, suit, administrative action or examination, claim, or demand whatsoever relating to the Property before or by any federal or state court, commission, regulatory body, administrative agency or other governmental body, domestic or foreign other than the Condemnation Proceedings.

6.1.5 <u>Environmental.</u> To Seller's actual knowledge, without independent investigation, no Hazardous Materials, other than possibly asbestos, have been generated, released into, stored or deposited over, upon or below the Property in violation of, or in a manner which reasonably may be expected to give rise to liability under any Environmental Laws.

6.1.6 <u>Environmental Notices.</u> Seller has no Knowledge of, and has not received any written notice from, any Governmental Authority alleging any violation of Environmental Laws, which, in each case either remains pending or unresolved, or is the source of ongoing obligations or requirements as of the Closing Date.

6.1.7 <u>No Foreign Entity</u>. Seller is not a "foreign person" as defined by the Internal Revenue Code ("**IRC**"), Section 1445. Seller agrees to execute and deliver to Purchaser, at Closing, a certification of non-foreign status (the "**FIRPTA Affidavit**").

6.2 **Representations and Warranties of Purchaser**. To induce Seller to execute this Agreement and perform its obligations hereunder, the following representations and warranties of Purchaser set forth in this Section 6.2 shall be true as of the Effective Date and the Closing Date and shall not survive Closing. If Purchaser acquires knowledge of any facts rendering any of the foregoing representations and warranties false at any time prior to Closing, Purchaser shall immediately notify Seller in writing of such facts (provided, that a failure to give notice in accordance with this sentence shall not constitute a breach of this Agreement for purposes of Section 14.2.1). Purchaser hereby represents and warrants to Purchaser as of the Effective Date:

6.2.1 <u>Organization, Execution and Power of Purchaser</u>. Purchaser is a limited liability company duly organized, validly existing and in good standing under the Laws of the State of Delaware, with full power and authority to enter into this Agreement and to perform its obligations hereunder. The execution, delivery and performance of this Agreement and the other agreements contemplated hereby to be executed and delivered by Purchaser, the consummation of the transactions contemplated hereby and thereby have been duly and validly authorized by all requisite company action on the part of Purchaser, and no other company proceedings on the part of Purchaser are necessary to authorize the execution, delivery or performance of this Agreement or the other agreements contemplated hereby. This Agreement and the other agreements contemplated hereby to be executed and delivered by Purchaser constitute valid and binding obligations of Purchaser, enforceable in accordance with their respective terms.

6.2.2 <u>No Conflict</u>. Purchaser's execution and delivery of, and performance of its obligations under, this Agreement will not conflict with Purchaser's organizational documents or other corporate governing documents, constitute a material default under any document, instrument or agreement to which Purchaser is a party, or violate any applicable law, regulation or court order.

6.2.3 <u>Sufficient Funds; Adequate Assurances</u>. Purchaser has, and as of the Closing will have, immediately available funds sufficient for the satisfaction of all of Purchaser's obligations under this Agreement, including the payment of the Purchase Price when due and all fees, expenses of, and other amounts required to be paid by, Purchaser in connection with the transactions contemplated hereby.

7. **Brokers**.

7.1 Seller represents and warrants that Seller has not been represented by any brokers in this transaction.

7.2 Purchaser represents and warrants that Purchaser has not been represented by a broker in this transaction other than Sean Zimmerman of Launch Real Estate, who shall be paid by Purchaser pursuant to a separate agreement.

**8.** **Closing Costs**.

8.1     Seller shall pay at Closing all sums due from Seller under Section 11 below. Seller shall pay all sums necessary, including prepayment fees, to discharge and release all Seller Liens. Seller shall be responsible for the payment of its own legal, counsel or consultants' fees incurred in connection with this transaction.

8.2     Purchaser shall pay at Closing: (i) recording fees on the Deed; (ii) escrow and closing fees charged by the Title Company; (iii) the cost of the title insurance and Survey and other costs of Purchaser's due diligence); and (iv) all sums due from Purchaser under Section 11 below. Purchaser shall be responsible for the payment of its own legal, counsel or consultants' fees incurred in connection with this transaction.

**9.** **Operations Pending Closing.**

9.1     <u>Operating Covenants Generally</u>. After the date of this Agreement and prior to Closing, except as required by applicable Law (including the Bankruptcy Code), as consented to in writing by Purchaser (which consent shall not be unreasonably withheld, conditioned or delayed) or as required by any Order of the Bankruptcy Court, Seller shall maintain the Property in the same condition as of the date of this Agreement, ordinary wear and tear, casualty and Condemnation excepted. From and after the Effective Date, Seller shall not, except as required by applicable Law (including the Bankruptcy Code) or as required by any Order of the Bankruptcy Court, without Purchaser's prior written consent, which may be withheld in Purchaser's sole discretion, (i) alter or permit waste upon the Land or Buildings, (ii) grant any easements or rights-of-way affecting the Property, (iii) convey any estate or interest in the Property, Condemnation excepted, (iv) further encumber the Property, or (v) move or demolish any existing buildings or other structures located on the Land.

9.2     <u>Service Contracts</u>. From and after the Effective Date until the earlier of the termination of this Agreement and the Closing, except as required by applicable Law (including the Bankruptcy Code) or as required by any Order of the Bankruptcy Court, Seller shall not enter into any new service contracts or leases which would be binding upon the Property or Purchaser after Closing without first obtaining Purchaser's prior written consent, which such consent may be withheld in Purchaser's sole discretion if such Service Contract or lease will survive Closing. All Service Contracts and any leasehold interests shall be terminated or rejected as of or prior to the Closing Date.

9.3     <u>Insurance</u>. To the extent permitted by applicable Law (including the Bankruptcy Code) and not prohibited by any Order of the Bankruptcy Court, Seller shall maintain in full force and effect substantially the same public liability and casualty insurance coverage now in effect with respect to the Property.

9.4     <u>Notices</u>. Seller shall provide Purchaser, within five (5) business days of receipt, but in any event, on or before the Closing Date, copies of any written notices Seller receives with respect to all Condemnation (including any related litigation) proceedings affecting the Property, and all other written notices which it receives from any Governmental Authority with respect to the use and occupancy or physical condition of the Property.

9.5     Bankruptcy Matters.

9.5.1 Seller agrees to diligently pursue the Bankruptcy Court Approval and final entry of the Sale Order. Seller shall provide Purchaser with a copy of any applicable filing with the Bankruptcy Court at least three (3) calendar days prior to filing, or if such notice is not reasonably practicable under the circumstances, as promptly as practicable thereunder. Seller shall notify Buyer of any hearings to be conducted by the Bankruptcy Court regarding approval of the transactions contemplated by this Agreement and the Option Agreement as soon as reasonably possible after such hearings are scheduled. The Sale Order shall be in form acceptable to Purchaser in its sole and absolute discretion.

9.5.2 Purchaser agrees that it will promptly take such actions as are reasonably necessary in its reasonable discretion to assist in obtaining the Bankruptcy Court Approval and final entry of the Sale Order.

**10.     Closing**.

10.1 Closing. Seller and Purchaser agree to make full settlement in accordance with the terms hereof at the "**Closing**" which shall take place on the date which is no later than thirty (30) days after the Effective Date, subject to satisfaction or waiver (to the extent such waiver is permitted by applicable Law) of all conditions to Closing. Time is of the essence. The Closing period shall be tolled up to ten (10) business days in the event of Force Majeure and if such condition does not resolve itself within such period then either Seller or Purchaser may elect to terminate this agreement whereupon the Option Earnest Money and Deposit shall be returned to Purchaser and Seller may sell the Property to any other potential purchaser approved by the Bankruptcy Court.

10.2 Seller Deliverables. At Closing, Seller shall deliver (duly and fully executed, acknowledged and notarized as appropriate) to the Title Company or perform all of the following:

10.2.1 Special Warranty Deed (the "**Deed**") conveying title to the Property in form substantially similar to **Exhibit B** attached hereto and incorporated herein by this reference;

10.2.2 In the event the legal description set forth on the Survey differs from the legal description in Seller's vesting deed and Seller does not wish to include the survey legal description in the Deed, then Seller shall also deliver a Quit Claim Deed (the "**Quit Claim Deed**") in a form substantially similar to **Exhibit C** attached hereto and incorporated herein by this reference, which shall use the legal description from the Survey.

10.2.3 Bill of Sale conveying the Personal Property to Purchaser (the "**Bill of Sale**");

10.2.4 A general assignment and assumption agreement (the "**Assignment**") assigning to Purchaser all of Seller's right, title and interest in and to all development rights and approval pertaining to the Land;

10.2.5 Any other documents to evidence the authority of Seller to consummate the Closing reasonably requested by the Title Company or Purchaser;

10.2.6 Possession of the Property free and clear of all parties in possession, and all keys, codes and other security devices in Seller's possession for all facilities at the Property;

10.2.7 The Title Company's standard Owner/Seller affidavit and lien waiver;

10.2.8 The FIRPTA Affidavit, executed by Seller;

10.2.9 A certification stating that the conditions set forth in Section 14.1.1 have been satisfied; and

10.2.10 The Condemnation Assignment (defined below).

10.3 <u>Purchaser Deliverables</u>. At Closing, Purchaser shall deliver (duly and fully executed, acknowledged and notarized as appropriate) to the Title Company or perform the following:

10.3.1 The Assignment;

10.3.2 The Purchase Price;

10.3.3 A certification stating that the conditions set forth in Section 14.2.1 have been satisfied; and

10.3.4 The Condemnation Assignment.

10.4 <u>Other Deliverables</u>. At Closing, both parties agree to duly execute and/or deliver all other documents reasonably necessary to consummate this transaction, including, without limitation, a settlement statement setting forth the charges, credits and adjustments to each party.

**11. Adjustments and Prorations.** All items of income or expense arising from the ownership of the Property shall be prorated and adjusted as of unless otherwise specifically mentioned herein including, without limitation, the following:

11.1 <u>Real Estate Taxes and Assessments</u>. Real estate taxes, general and special, assessments and other public charges against the Property for the tax year in which Closing occurs shall be prorated as of the Closing Date based upon the current property assessment, provided, however, if the current year assessment and/or tax rate is not available one hundred and five percent (105%) of the prior year's assessment shall be used for such calculation.

11.2 <u>Utilities</u>. Water, sewer, electric, and other utility charges shall be prorated as of the Closing Date. If consumption of any of the foregoing is measured by meter, Seller shall use commercially reasonable efforts, prior to the Closing Date, to obtain a reading of each such meter

- 10 -

and a final bill as of the Closing Date. If there is no such meter or if the bill for any of the foregoing has not been issued as of the Closing Date, then the charges therefor shall be adjusted at the Closing Date on the basis of the charges of the prior period for which such bills were issued. Seller and Purchaser shall cooperate to cause the transfer of utility accounts from Seller to Purchaser. Any utility security deposits of Seller shall remain the property of Seller and shall not be assigned to Purchaser.

11.3 <u>Insurance Policies</u>. Premiums on insurance policies will not be adjusted. As of the Closing Date, Seller shall terminate its insurance coverage on the Property and Purchaser shall effect its own insurance coverage.

## 12. **Defaults; Remedies**.

12.1 In the event Seller shall fail to perform its obligations hereunder or to make full Closing in accordance with the terms hereof, which failure cannot be cured within a reasonable time (not to exceed 30 days) by Seller or by the Sale Order, Purchaser shall be entitled to: (i) waive the breach or default and proceed to Closing in accordance with the provisions of this Agreement without reduction of the Purchase Price; (ii) terminate this Agreement by written notice to Seller and receive a return of the Option Earnest Money and Deposit. Notwithstanding the foregoing, nothing in this Agreement shall be deemed to limit Purchaser's rights at law or in equity under any applicable terms of this Agreement that survive a Closing or termination of this Agreement.

12.2 If Purchaser shall fail to perform its obligations hereunder to make full Closing in accordance with the terms hereof when required to do so hereunder and all Conditions Precedent to Closing have been satisfied in full, then the Option Earnest Money and Deposit shall be forfeited by Purchaser and retained by Seller as liquidated damages and as Seller's sole remedy hereunder (it being expressly acknowledged that the amount and extent of damages suffered by Seller in such case would be difficult or impossible to determine with exactitude) whereupon Purchaser shall then be released and discharged from any and all further liability or obligation hereunder. Notwithstanding the foregoing, nothing in this Agreement shall be deemed to limit Seller's rights at law or in equity under any applicable terms of this Agreement that survive a Closing or termination of this Agreement.

## 13. **Risk of Loss; Condemnation**.

13.1 **Risk of Loss**. If any portion of the Property shall be damaged by fire or casualty and not repaired and restored to its original condition prior to Closing and if the estimated cost of repair thereof is less than Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00), then, in such event Purchaser shall be required to close hereunder without any reduction in the Purchase Price, and at Closing, to the extent permitted by applicable Law (including the Bankruptcy Code) and the Bankruptcy Court, Seller shall assign to Purchaser the proceeds of any insurance policies maintained by Seller and payable to Seller on account of such damage or destruction (including any business interruption coverage maintained by Seller applicable to any period on and after the Closing Date). If the aggregate estimated cost of repairing such damage is Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00) or more, then Purchaser may, at its sole option, (y) terminate this Agreement, in which event the Option Earnest Money and Deposit shall be

- 11 -

immediately returned by Escrow Agent to Purchaser and all parties shall thereupon be relieved of further liability and obligations hereunder, except for those obligations which expressly survive a termination of this Agreement, or (z) elect to proceed to Closing, in which event the provision of the preceding sentence shall govern.

13.2 **Condemnation**. Purchaser acknowledges that there are certain condemnation proceedings pending against the Property styled as [current pleading information to be inserted prior to closing] (the "**Condemnation Proceedings**"). At Closing Seller shall assign to Purchaser any and all rights of Seller in and to the Condemnation Proceedings and any award paid or to be paid pursuant thereto (the "**Condemnation Assignment**"). If, prior to the Closing Date, any other condemnation proceeding that involves a material portion of the Property, would materially impact Purchaser's contemplated use and/or development of the Property, or would materially impact the value of the Property (a "**Condemnation**") shall be commenced by any competent public authority against the Property, Seller shall promptly give Purchaser written notice thereof. Upon notice of the commencement of any such proceedings (from Seller or otherwise), Purchaser shall have the right to either (i) accept the Property subject to the proceedings without any reduction in the Purchase Price, whereupon any award shall be paid to Purchaser and Seller shall deliver to Purchaser at Closing all assignments and other documents reasonably requested by Purchaser to vest such award in Purchaser; provided that, (A) Seller shall not consent to any Condemnation or agree to any Condemnation award without the prior written consent of Purchaser; (B) prior to Closing, Seller shall provide Purchaser with an opportunity to participate with Seller in any negotiations relating to a the Condemnation Proceedings or any other Condemnation or any Condemnation award to be made in connection therewith; and (C) Seller shall cooperate with Purchaser after Closing in prosecuting any claim for a Condemnation award arising prior to Closing, at no cost or expense to Seller, or (ii) terminate this Agreement by giving written notice to Seller to that effect within ten (10) days from the date Purchaser received notice of the proceedings. If this Agreement is terminated by Purchaser as aforesaid, then the Option Earnest Money and Deposit shall be immediately returned by the Title Company to Purchaser and all parties shall thereupon be relieved of further liability and obligations hereunder, except for those obligations which expressly survive a termination of this Agreement. If Purchaser fails to notify Seller within such period of Purchaser's intention to terminate this Agreement pursuant to this paragraph, then Purchaser shall proceed to Closing and Seller's rights to any awards shall be assigned to Purchaser at Closing.

**14.    Conditions Precedent to Closing**.

14.1 Purchaser Closing Conditions. The following conditions shall exist at the time of Closing hereunder, and the obligation of Purchaser to close hereunder shall be expressly conditioned upon and subject to the satisfaction (or written waiver by Purchaser, to the extent permitted by applicable Law) of each such condition:

14.1.1 Each of the representations and warranties of Seller contained herein shall be true in all material respects as if made as of the date of Closing, and Seller shall have complied with and not be in material breach of any of the covenants of Seller hereunder or thereunder to the extent such covenants are by their terms to be performed on or before the Closing.

14.1.2 Title to the entire Property shall be in the condition specified in

- 12 -

Section 4.1 hereof.

14.1.3 The Bankruptcy Court Approval shall have been obtained or deemed to be obtained and the Sale Order shall be final and not subject to any stay.

14.2 <u>Seller Closing Conditions</u>. The following conditions shall exist at the time of Closing hereunder, and the obligation of Seller to close hereunder shall be expressly conditioned upon and subject to the satisfaction (or written waiver by Seller, to the extent permitted by applicable Law) of each such condition of each such condition:

14.2.1 Each of the representations and warranties of Purchaser contained herein shall be true in all material respects as if made as of the date of Closing, and Purchaser and the Buyer shall have complied with and not be in material breach of any of the covenants of Purchaser hereunder and the Buyer thereunder to the extent such covenants are by their terms to be performed on or before the Closing.

14.2.2 The Bankruptcy Court Approval shall have been obtained or deemed to be obtained and the Sale Order shall be final and not subject to any stay.

14.2.3 Buyer pays the Purchase Price.

14.3 <u>Failure of Closing Conditions</u>. If any one or more of the conditions set forth in Section 14.1 or Section 14.2 above shall not have been satisfied as of the Closing Date, then Purchaser or Seller, as applicable, shall have the option, in its sole discretion, exercised by written notice to Seller or Purchaser, as applicable, either to: (i) waive such condition (to the extent a waiver is permitted by law) and make full Closing under this Agreement in accordance with the terms and conditions hereof, with such reductions or adjustments in the Purchase Price as may be mutually negotiated with the other party; or (ii) to terminate this Agreement, with Purchaser to receive an immediate return of the Option Earnest Money and Deposit, and all parties shall thereupon be relieved of further liability and obligations hereunder, except for those obligations which expressly survive a termination of this Agreement. A party's elections under clauses (i) or (ii) of this Section 14.2 shall be the party's sole remedy if any condition to Closing set forth in this Section 14 shall not have been satisfied unless the failure of such condition to be satisfied shall have been used by a breach of this Agreement by the other party, in which event the provisions of Section 12 of this Agreement shall also apply.

**15.** **No Waiver.** The exercise of (or failure to exercise) any one of either party's rights or remedies under this Agreement shall not be deemed to be in lieu of or a waiver of any other right or remedy contained herein or in any of the other documents, agreements or instruments delivered in connection herewith or available to such party at law or equity.

**16.** **Interpretation.** Each of Seller and Purchaser acknowledge that it was represented by counsel in connection with this Agreement and that it or its counsel drafted, reviewed and/or revised this Agreement and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

- 13 -

**17.** **Notices.** All notices, waivers, demands, requests or other communications required or permitted by this Agreement ("**Notices**"), to be effective, shall be in writing, and shall be given by email, as follows:

If to Seller:

Taylor Robinson (Taylor@GenevaAZ.com) and
Sam Robinson (Sam@GenevaAZ.com), with a copy to
Thomas Littler (Telittler@gmail.com)

If also by mail:
Gentree, LLC
3620 East Campbell Ave, Suite B
Phoenix, AZ 85018

Thomas E Littler
Littler PC
341 W. Secretariat Dr.
Tempe, AZ 85284

If to Purchaser:
Matt Keister (mkeister@walton.com) and
Bill Doherty (bdoherty@walton.com) with a copy to
Stacy Krumin (stacy.krumin@squirepb.com)
Kelly Singer (Kelly.singer@squirepb.com)
Mark Salzberg (mark.salzberg@squirepb.com)

If also by mail:
Walton Global Holdings, LLC
8800 N. Gainey Center Dr., Suite 345
Scottsdale, AZ 85258

Squire Patton Boggs (US) LLP
201 North Franklin Street, Suite 2100
Tampa, Florida 33602
Attn:  Stacy Krumin

If to the Title Company:

Fidelity National Title Insurance Company

Phoenix, AZ
Email:
Attn:

- 14 -

or to any other address or addressee as any party entitled to receive notice under this Agreement shall designate, from time to time, to others in the manner provided for in this section for the service of Notices. All Notices given in accordance with this Section will be deemed to have been received the date of the email transmission. Notices given by counsel to a party in accordance with the above shall be deemed given by such party.

18. **Benefit and Burden; Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and, to the extent permitted hereunder, assigns. The provisions herein shall survive Closing and delivery of the Deed and shall not be merged therein. This Agreement shall not be assignable by either party without the prior written consent of the other, which consent shall be in its sole discretion; provided, however, that (a) Purchaser shall have the right, without the need to obtain the consent of Seller, but with notice delivered at least three (3) business days prior to Closing, to assign all of Purchaser's rights, title and interest in and to an entity that is controlled by, controlling or under common ownership with Purchaser, and (b) Purchaser will not thereby be released from any of Purchaser's duties, obligations or liabilities hereunder; provided, further, that Seller may assign this Agreement and any of its rights and obligations hereunder to any person or entity, including a liquidating trust, appointed (i) pursuant to a plan of reorganization or liquidation to administer and implement such plan of reorganization or liquidation, as applicable, or (ii) to facilitate the administration and closure of the Bankruptcy Case whether under Chapter 11 or Chapter 7 of the Bankruptcy Code. Upon any permitted or approved assignment by a party, such party will deliver to the other party a true and complete copy of the fully executed assignment and assumption agreement whereby such party's assignee expressly assumes all obligations of such party hereunder.

19. **Entire Agreement.** Each of the Recitals set forth in this Agreement is incorporated herein to the same extent as if it had been stated herein in full. Each of the exhibits and schedules attached to this Agreement is incorporated herein by reference. Any exhibit or schedule not available at the time this Agreement is executed shall be agreed upon, initialed and attached by the parties as soon after execution as is practicable, but failure to attach any exhibit shall not affect the validity of this Agreement unless the parties are in material disagreement as to the contents thereof. This Agreement and the Option Agreement contains the entire agreement among the parties, provided, however, in the event of a conflict between this Agreement and the Option Agreement, this Agreement shall control. There are no promises, agreements, terms, conditions, undertakings, understandings, warranties, covenants or representations, oral or written, express or implied, among them other than as set forth in this Agreement and the Option Agreement. This Agreement may not be modified orally or in any manner other than by an agreement in writing signed by all the parties or their respective successors in interest.

20. **Governing Law; Jurisdiction.** This Agreement shall be governed by, construed in accordance with, and enforceable under, the laws of the State of Arizona. In the event of any dispute concerning this Agreement, the parties hereto agree that jurisdiction and venue over such dispute shall lie with be in the Federal District Court located in the State of Arizona or the Bankruptcy Court and each party hereby waives any objection which it may have to the laying of venue of any such action in any of such courts.

- 15 -

**21.** **Attorneys' Fees**. Should either party employ attorneys to enforce any of the provisions hereof, the party against whom any final judgment is entered agrees to pay the prevailing party all reasonable costs, charges, and expenses, including attorneys' fees, expended or incurred in connection therewith. The term "attorneys' fees" and other similar terms as used herein shall mean attorneys' fees actually incurred at customary hourly rates without regard to any statutory presumptions as to such fees.

**22.** **Severability.** The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of the provisions hereof shall not affect the validity or enforceability of the other provisions hereof.

**23.** **Further Assurances.** Each of the parties hereto shall at any time and from time to time after the Closing execute and deliver such further instruments, documents and certificates and do such further acts and things, as may be required by law or which may be appropriate or reasonable in order to carry out the intent and purposes of this Agreement, or to vest more fully in Purchaser the title to the Property.

**24.** **Business Days.** If any date upon which action is required under this Agreement shall be a Saturday, Sunday or a legal holiday, the date for such action shall be extended to the first business day after such date that is not a Saturday, Sunday or legal holiday.

**25.** **Time of Performance**. Time is of the essence hereunder. The parties hereto shall use good faith commercially reasonable efforts to perform their duties and obligations under this Agreement within the time frames or by the dates set forth in this Agreement.

**26.** **Delivery; Counterparts**.

26.1 Delivery of this Agreement may be accomplished by any method specified in Section 17.

26.2 To facilitate execution, this Agreement may be executed in as many counterparts as may be required; and it shall not be necessary that the signatures of, or on behalf of, each party, or that the signatures of all persons required to bind any party, appear on each counterpart; but it shall be sufficient that the signature of, or on behalf of, each party, appear on one or more of the counterparts. Electronic signatures of this Agreement shall be valid for all purposes. All counterparts shall collectively constitute a single agreement. It shall not be necessary in making proof of this Agreement to produce or account for more than a number of counterparts containing the respective signatures of, or on behalf of, all of the parties hereto.

**27.** **No Recordation**. Seller and Purchaser each agrees that neither this Agreement nor any memorandum or notice hereof shall be recorded. The provisions of this Section shall survive any termination of this Agreement.

**28.** **Broker Disclosure**. Officers, directors, members, managers or employees of Seller (and of Seller's members) and Purchaser may be licensed Arizona real estate agents, but are not receiving a commission on account of this transaction.

[Signatures Begin on Following Page.]

- 16 -

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

| | |
|---|---|
| **Executed this \_\_\_ Day of _____, 2022** | <u>**PURCHASER**</u>:<br><br>**WALTON GLOBAL HOLDINGS, LLC**, a Delaware limited liability company<br><br><br>By:<br>_____<br>Name:<br>_____<br>Title:<br>_____ |
| **Executed this \_\_\_ Day of _____, 2022** | <u>**PURCHASER:**</u><br><br>**GENTREE, LLC,** An Arizona limited liability company<br>By:<br>_____<br>Name:<br>_____<br>Title:<br>_____ |
| **Executed this \_\_\_ Day of _____, 2022** | **FIDELITY NATIONAL TITLE INSURANCE COMPANY**<br><br>By:<br>_____<br>Name:<br>_____<br>Title:<br>_____ |

010-9323-1930/7/AMERICAS

**LIST OF EXHIBITS**

Exhibit A     Legal Description of Land
Exhibit B     Deed
Exhibit C     Quit Claim Deed


**LIST OF SCHEDULES**

Schedule 6.1          Real Estate Disclosure Schedule

010-9323-1930/7/AMERICAS

## <u>EXHIBIT A</u>

### LEGAL DESCRIPTION OF LAND

PARCEL NO. 1:
The North half of the Northwest quarter of the Northeast quarter of the Southeast quarter of Section 10,
Township 2 North, Range 4 East of the Gila and Salt River Base and Meridian, Maricopa County,
Arizona.
EXCEPT the East 200 feet, thereof.

PARCEL NO. 2:
The North half of the South half of the Northwest quarter of the Northeast quarter of the Southeast quarter
of Section 10, Township 2 North, Range 4 East of the Gila and Salt River Base and Meridian, Maricopa
County, Arizona.
EXCEPT the East 200 feet, thereof.

APN: 174-64-003A

# EXHIBIT B

## FORM OF DEED

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

[_____]
[_____]
[_____]
[_____]

---

## SPECIAL WARRANTY DEED

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, **[_____]**, [a _____] ("**Grantor**"), hereby conveys to [_____], [a _____] ("**Grantee**"), the following described property located in [_____] County, Arizona (the "**Property**"):

See **Exhibit "A"** attached hereto and by this reference made a part hereof;

**TOGETHER WITH** all of the right, title and interest of Grantor, if any, in and to all easements, rights of way, privileges, appurtenances, and rights to the same, belonging to and inuring to the benefit of the Property, together with any building, structures and improvements on the Property.

**SUBJECT TO** covenants, conditions and other instruments of record listed in **Exhibit "B"** attached hereto and by this reference made a part hereof (the "**Permitted Exceptions**").

**AND THE GRANTOR** hereby binds itself and its successors to warrant and defend the title against the acts of the Grantor and no other, subject to the Permitted Exceptions.

**IN WITNESS WHEREOF**, the Grantor has caused this Special Warranty Deed to be executed this _____ day of _____, 202_.

**GRANTOR:**

[_____], [a
_____]

**By:**_____
     **Name:**
     **Title:**

**STATE OF** _____ )

_____ ) ss.

**COUNTY OF** _____ )

      The foregoing instrument was acknowledged before me this _____ day of _____, 202__, by _____, the _____ of _____, a _____, on behalf of the _____.

_____
Notary Public

My Commission Expires:

**Exhibit "A"**

Legal Description


PARCEL NO. 1:
The North half of the Northwest quarter of the Northeast quarter of the Southeast quarter of Section 10, Township 2 North, Range 4 East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona.
EXCEPT the East 200 feet, thereof.

PARCEL NO. 2:
The North half of the South half of the Northwest quarter of the Northeast quarter of the Southeast quarter of Section 10, Township 2 North, Range 4 East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona.
EXCEPT the East 200 feet, thereof.


APN: 174-64-003A

**Exhibit "B"**

Permitted Exceptions

## EXHIBIT C

### FORM OF QUIT CLAIM DEED

RECORDING REQUESTED BY
AND WHEN RECORDED,
RETURN TO:

_____
_____
_____
Attention: _____

*For Recorder's Use*

**Exempt from Affidavit of Property Value and Fee per A.R.S. §11-1134(__)(___).**

### QUIT CLAIM DEED

For Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, [_____], [_____] (the "**Grantor**"), hereby quit-claims, without covenant, warranty or representation, express or implied, to [_____], [_____] (the "**Grantee**") any and all right, title and interest in that real property located in [_____] County, Arizona, and legally described in Exhibit A attached hereto and incorporated herein by reference (the "**Property**").

THIS DEED IS BEING RECORDED FOR THE SOLE PURPOSE OF CORRECTING THE LEGAL DESCRIPTION OF THE PROPERTY DESCRIBED IN EXHIBIT A OF THE DEED RECORDED IN_____.

*[Signature page to follow]*

DATED this____ day of_____, 202_.

**GRANTOR:**

[_____],
[_____]

By:_____
Name:
Title:
_____

STATE OF ARIZONA　　　　)
　　　　　　　　　　　　) ss.
County of _____ _　　)

　　　The foregoing instrument was acknowledged before me this _____, 202_ by _____, the _____ of [_____], [_____], on behalf of the [_____].

_____
Notary Public

My Commission Expires:

_____

**EXHIBIT A**

**PROPERTY**

## <u>SCHEDULE 6.1</u>

### REAL ESTATE DISCLOSURE SCHEDULE

1.  Lead paint may exist due to the age of the Property, although Seller does not have any actual knowledge of any lead paint that exists.

2.  Termites have been located in some of the Buildings on the Property.

3.  Some septic tanks exist on the Property.

4.  A public sewer extension exists on the Property but is not connected to all Buildings.